WESTERN HEIGHTS INDEPENDENT SCHOOL DISTRICT v. STATE
2022 OK 79
Case Number: 120034
Decided: 10/04/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 79, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

WESTERN HEIGHTS INDEPENDENT SCHOOL DISTRICT NO. I-41 OF OKLAHOMA COUNTY and MANNIX BARNES, Superintendent, Petitioners/Appellants,
v.
THE STATE OF OKLAHOMA, ex rel., OKLAHOMA STATE DEPARTMENT OF EDUCATION, OKLAHOMA STATE BOARD OF EDUCATION, and JOY HOFMEISTER, State Superintendent of Public Instruction, Respondents/Appellees.
APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY
¶0 Petitioners, school district and superintendent of the school district, sought a declaratory judgment, temporary restraining order, and preliminary injunction. The Honorable Aletia Haynes Timmons, District Judge for the District Court of Oklahoma County, denied the requests for temporary restraining order and preliminary injunction. Petitioners filed an interlocutory appeal and motion to retain the appeal in the Supreme Court for appellate review. The Court granted the motion to retain. We hold the Superintendent failed to show a likelihood of success on the merits of his claim that a due process violation occurred, or a likelihood of success on the merits of his claim that his administrative remedy was inadequate, and failed to show he was entitled to a preliminary injunction. We hold the School District failed to show a likelihood of success on the merits on a claim the State Board lacked authority to place the school district on probation with a condition requiring an interim superintendent, and failed to show a likelihood of success on the merits of a claim the school district was entitled to an administrative individual proceeding prior to the school district being placed on probation, and school district failed to show it was entitled to a preliminary injunction.
DISTRICT COURT ORDER AFFIRMED
Jerry L. Colclazier, Colclazier & Associates, Seminole, Oklahoma, for Petitioners/Appellants.
Brad S. Clark, Lori Murphy, Telana McCullough, and Desiree Singer, Oklahoma City, Oklahoma, for Respondents/Appellees.
EDMONDSON, J.
¶1 Petitioners, a school district and the school district's superintendent, brought an action in a District Court to stop the Oklahoma State School Board from taking actions against the school district in the meetings of the Board. The Board continued with its meetings and petitioners filed requests for a restraining order, preliminary injunction, and declaratory judgment to prevent further State Board actions until both the school district and its superintendent obtained administrative individual proceedings. The District Court denied the petitioners' requests and they appealed. The State Board continued with its meetings, placed the school district on probation and required an interim superintendent as a condition of probation. We affirm the District Court.
I. Controversy in District Court
¶2 The Oklahoma State Board of Education wanted Western Heights Independent School District No. I-41 to appear at the Board's meeting on April 9, 2021. No one representing the District appeared at the April 9th meeting, and during the meeting the Board "adjusted the District's accreditation status to 'Accredited with Probation.'" Then on April 22, 2021, the District and its Superintendent, Mannix Barnes, filed a petition for a declaratory judgment in the District Court of Oklahoma County. Petitioners sought both declaratory and injunctive relief against the Board, the Oklahoma State Department of Education (OSDE), and the State Superintendent of Public Instruction.
¶3 Petitioners stated they "are entitled to judicial review of all the Respondents' decisions, pursuant to " of the Administrative Procedures Act. They alleged they "are entitled to both a judicial declaration and injunctive relief as provided in Title [of the Oklahoma Open Meeting Act] to enjoin and restrain the Board from 'lowering' Western Heights accreditation to probation." They sought a declaratory judgment to determine the proper procedures to be used by respondents.
¶4 Petitioners sought an injunction to prevent the respondents "from lowering or revoking the District's accreditation status until such time as the Respondents promulgate a fair procedure and policy for doing so." They also sought a judicial declaration that in administrative proceedings before the OSDE the defendants "violated the District's right of a fair and impartial adjudication, and have violated the due process rights of the Superintendent, by reaching decisions of great importance without standards, procedures and policies, and such decisions should be vacated and held for naught."
¶5 On June 24, 2021, the State Board of Education issued an "Emergency Order" based upon an "Application for Emergency Order to Summarily Suspend Teaching Certification" of Mannix Barnes. The conclusion of the lengthy order states in part: "effective immediately, the Oklahoma Teaching Certificate of Mannix Barnes is hereby suspended pending an individual proceeding for revocation or other action, effective August 2, 2021 or thereafter as determined by the State Board."
¶6 In July 2021, the petitioners filed a motion for temporary restraining order and preliminary injunction. They requested an order vacating the suspension of Barnes as Superintendent, and an order enjoining respondents from further action against the District or Superintendent unless authorized by the trial court.
¶7 On July 9, 2021, a hearing was held on the motion for a temporary restraining order and preliminary injunction. Counsel for respondents stated an emergency order had been entered on June 24th at a public meeting with reference to Mannix Barnes. Notice was sent by the respondents within three days after the June 24th meeting saying "a hearing will be scheduled on a revocation" "[s]o there is a hearing that will be held on the potential revocation of the District Superintendent's certificate." In other words, the State Board used an emergency procedure to summarily suspend Barnes's certificate, but a revocation of his certificate within the context of an administrative individual proceeding had not yet occurred. Counsel for respondents stated a scheduled State Board hearing for July 12th
¶8 The trial court referenced the statements by counsel for respondents and the following occurred during the hearing.
Court: And your testimony is, as counsel for the State Department of Ed. . . . And there is a hearing to be scheduled on the revocation of his, the Superintendent's license? 
Response: That is all correct.
Court: So as we sit here today is the Superintendent still the superintendent of Western Heights?
Response: As far as I have been made aware, that is true. . . That [recent legislation] requires when an individual, includes the school district superintendent, is suspended by the State Board of Education, the District is required to put the person on suspended leave. . . .
Court: All right. And is that leave with pay or leave without?
Response: It is leave with pay.
The trial court continued its questioning and the State Board stated Barnes was entitled to a Loudermill hearing, but this hearing had not yet occurred. Petitioners argued the State Board lacked the power or legal authority to suspend anyone. They argued the State Board could grant a license or revoke a license, but not suspend a license or certificate pending a revocation proceeding. They stated the following.
Judge, the word "suspend" is nowhere in that statute []. Nowhere. It talks about revocation. It talks about issuing a license. The word "suspend" is nowhere in the statute. Suspend doesn't come up until you look at the agency regulation, which is ultra vires, they can't just decide with their regulation something that the statute doesn't give them authority to do.
ROA 324, Tr. at p. 18. The trial judge then observed the statute [] states the Board "shall formulate rules governing the issuance and revocation of certificates for superintendent of schools," and that the Oklahoma Administrative Procedures Act authorized emergency suspensions within the context of pending individual proceedings.
¶9 The parties and the trial judge again discussed the effect of Barnes's emergency suspension. Counsel for the State Board stated emergency suspensions with administrative leave are "with pay" and the persons suspended receive "the benefits that they're otherwise entitled until a [revocation] hearing has been held." Id. Tr. at 340. Counsel for Barnes responded and stated a suspension with pay and benefits was not in a letter sent to the school district, and "Not that it makes any difference, because when they tell Mr. Barnes he can't act as superintendent . . . that's the big harm there." Id. Barnes objected to the State Board considering the application for a summary emergency suspension during an executive session at the State Board's meeting.
¶10 The trial judge appeared to indicate Barnes was entitled to a hearing on the issue of license or certificate revocation, but not entitled to participation in a summary hearing which results in an emergency order of suspension when Barnes (1) continued to receive a salary and benefits after an emergency suspension, and (2) had an opportunity for an administrative hearing after the suspension.
¶11 The trial court denied the request for a temporary restraining order by a journal entry filed on August 6, 2021. Petitioners' filed on August 13, 2021, a supplemental motion for preliminary injunction. The same claims were made with some additional facts and argument. They challenged the emergency suspension of Barnes and the ongoing proceedings before the State Board and OSDE involving Barnes and the school district. They labeled their requests as "supplemental requests for relief" challenging respondents' actions. Petitioners included an affidavit of counsel in support of a request for a temporary restraining order. Respondents filed their response on November 4, 2021.
¶12 The trial court's journal entry denied the requests for a preliminary injunction and temporary restraining order. The order was filed November 19, 2021, and the court addressed individually each of petitioners' thirteen supplemental requests for relief. For example, when denying petitioners' first supplemental request: (A) The trial court determined respondents had authority to suspend Barnes's educator certificate; (B) Barnes was not entitled to a full evidentiary hearing prior to the emergency suspension, but Barnes was entitled to a hearing prior to a revocation of his certificate; and (C) The facts asserted in the emergency application to suspend and order of suspension were sufficient to demonstrate an emergency.
¶13 When addressing the first supplemental request for relief the court referenced several specific findings and one general finding referencing "other allegations" made by respondents concerning Barnes and the school district. The specific findings included: (1) The use/management of money including assertions "reflected in the 2019 and 2020 District audits and Barnes's testimony that he allowed things to go for a full year before making changes to what was found in the audits; (2) Child Nutrition Program services were impaired, "including a decision to cease provision of nutritional services to students;" (3) Fire services protection, "including the danger posed from February, 2021 to May 2021, the Oklahoma City Fire Department citation for noncompliance and the information reported by an employee with regard to these matters; (4) "Disharmony in community, parents' voices not heard by leadership;" (5) Significant loss of District personnel while Barnes was superintendent; and (6) District payroll, "Barnes may have inherited a system but he was a school board member and would have been informed and in favor of it." The trial court's order addressed an additional twelve supplemental requests for relief by petitioners which need not be repeated herein except as needed for our analysis of petitioners' assignment of error.
II. Appeal and Standard of Review
¶14 Petitioners appealed and filed a motion to retain the appeal in this Court for appellate review. Their motion to retain was granted. The trial court order brought for appellate review denied requests for a preliminary injunction and a temporary restraining order.
¶15 A temporary restraining order is one type of interlocutory order, and many interlocutory orders not subject to immediate appellate review may obtain appellate scrutiny upon appeal from a subsequent appealable order or judgment. This principle supports the rule that no exercise of judicial discretion by a District Court in a civil case at law and in equity is beyond this Court's constitutionally vested appellate jurisdiction. However, a request for temporary restraining relief and the order thereon is usually replaced or becomes moot by the procedure and order on a request for a temporary or preliminary injunction.
¶16 A petitioner may assert similar legal claims for the remedies of a temporary restraining order and a preliminary injunction with a decision on the latter reviewed in an appeal. This may occur pursuant to when a temporary restraining order was dissolved and similar legal claims were presented with a request for a temporary injunction which is examined during appellate review. No claim is made petitioners utilized a special statutory procedure creating rights for a temporary restraining order and appellate review outside the scope of . The exercise of discretion by the trial judge denying petitioners' request for a temporary restraining order is not before the Court for review.
¶17 Petitioners' petition in error states the appeal is appealable by right because the trial court's order denies a temporary or preliminary injunction. Petitioners also request as a form of appellate relief a declaratory judgment on the merits on certain claims. This request raises the issues concerning the nature of their trial court filings, the adjudication of the trial court reviewed on appeal, and whether the request for a declaratory judgment for appellate relief impermissibly broadens the scope of an interlocutory appeal beyond the authorizing statute, (b)(2).
¶18 Two sentences in the six-page trial court order state "petitioners' thirteenth enumerated supplemental request for relief has been previously adjudicated [and] this claim was denied and dismissed during the July 22, 2021, hearing on respondents' motion to dismiss." The request was a "declaratory judgment that the State Board executive sessions were unlawful under the Open Meeting Act." Petitioners' appellate brief-in-chief states the trial court previously dismissed Open Meeting Act claims, stated petitioners failed to exhaust administrative remedies when they failed to appear before a State Board meeting the previous April, and denied the motion to dismiss with respect to claims against the OSDE and petitioners' request for declaratory judgment. One result of this procedure is that the trial court did not finally dispose of all claims at this point because, as indicated by petitioners, claims remained pending in the trial court.
¶19 On August 13, 2021, petitioners filed a Supplemental Motion for Preliminary Injunction, and Brief in Support. The document states petitioners are seeking a preliminary injunction. However, the last two pages of the motion list thirteen enumerated specific "supplemental requests for relief." The first enumerated supplemental request specifically requests an injunction. Then enumerated requests "2, 3, 4, 5, 7, 8, 9, 10, 12, and 13 do not request injunctive relief, but request a "declaratory judgment." Enumerated request 6 requests an injunction, and enumerated request 11 asks for "an order barring respondents from issuing and or enforcing an order" related to specific circumstances listed by the parties.
¶20 We construe meaning of statements in the trial court's order based upon plain and consistent language expressed in the context of the purpose sought to be accomplished by the order, while giving effect to every word with the consequences that follow the necessary legal implications of its terms; and we apply a meaning consistent with parts of the judgment roll properly before us. Some of the multiple "declaratory judgment" requests for relief appear to relate to requests for injunctive relief based upon petitioners' perspective of the factual circumstances, and some appear to be similar to requests for findings of fact, some similar to conclusions of law, and some similar to a request for a partial summary adjudication. For example, one enumerated supplemental request states: "12. Declaratory Judgment that the March 25, 2021, State Board executive session was unlawful, there was no lawsuit or investigation, and the subsequent vote that the district had violated state laws and regulations was also unlawful since there had been no lawful hearing under the OAPA."
¶21 The multiple specific requests by petitioners for a "declaratory judgment" were denied in the context of the trial court denying a motion for a preliminary injunction. This Court does not review an order denying a request for summary judgment. A partial summary adjudication usually lacks immediate appealability as a non-appealable interlocutory order unless otherwise made appealable by statute. One purpose of a party seeking a "declaratory judgment" is to obtain a "final judgment" on the merits of a judicially cognizable claim or cause of action or actual controversy authorized by . Generally, a declaratory judgment proceeding is neither strictly legal nor equitable and assumes the character of the nature of the controversy. A petition for injunctive relief as well as a petition for declaratory judgment may be adjudicated on a motion for summary judgment. If the substance of an interlocutory order contains both adjudications of issues that are immediately appealable and adjudications on other issues that are not immediately appealable, then only the former part of the order is immediately appealable.
¶22 Generally, a preserved issue of law brought for appellate review receives de novo review. Factors such as the nature of the proceeding in the lower tribunal and the tribunal's decision also determine standards for appellate review, and in this controversy our appellate review is based, in part, upon the nature of a trial court proceeding in equity and order brought for review which denied a preliminary injunction.
¶23 All this means we review the trial court's denials of supplemental requests for "declaratory judgment" to such extent they may be construed as findings of fact and conclusions of law within a context of a request for preliminary injunctive relief. We may not expand our review of the trial court's findings and conclusions and turn them into a review on the merits beyond the equitable standard of "likelihood of success on the merits" as petitioners' appellate request for relief appears to suggest. This Court does not make first-instance determinations of disputed issues of either law or fact in the exercise of its appellate jurisdiction, and our appellate review may not be expanded to a review of the merits of petitioners' trial court claims on an appeal from an interlocutory order denying an injunction.
¶24 The standard of review for an order denying an injunction is whether there was an abuse of discretion by the trial judge, and the order will be reversed "only if the trial court's decision is clearly against the evidence or is contrary to a governing principle of law." Review of an order requesting relief in the nature of an injunction is whether the trial court abused its discretion or entered a decision clearly against the weight of the evidence. The trial court's conclusions on issues of law pertaining to the injunctive relief receive a non-deferential de novo appellate review.
¶25 We recently have explained what petitioners must show in the trial court to obtain a preliminary injunction.
To obtain a preliminary injunction, the plaintiffs must show that four factors weigh in their favor: (1) the likelihood of success on the merits; (2) irreparable harm to the parties seeking injunctive relief if the injunction is denied; (3) their threatened injuries outweigh the injury the opposing party will suffer under the injunction; and (4) the injunction is in the public interest.
Owens v. Zumwalt, , ¶ 8, 503 P.3d 1211, 1214. While a petitioner seeking a provisional preliminary or temporary injunction need only show a "likelihood" of success and "the burden of proof is less stringent than required in proceedings on the merits," a right to this equitable remedy "must be established by clear and convincing evidence and the nature of the injury must not be nominal, theoretical or speculative." We apply the appellate standard of review to what petitioners were required to show in the trial court in the context of the asserted errors on appeal by petitioners.
III. Issues and Analysis
¶26 Petitioners raised several assignments of error in a petition in error. They filed appellate briefs in this Court and their assignments of error preserved for review are those in an appellate brief-in-chief with supporting authority.
¶27 Petitioners' arguments on appeal are divided between those for the school district and those for Barnes. The school district's principal brief argues: (1) The district must receive an administrative individual proceeding pursuant to the Oklahoma Administrative Procedures Act prior to "any sanctions, takeover, change of accreditation or other punitive actions against the district;" (2) No statutory authority exists for the OSDE "to take over and/or operate a local district, conduct an 'intervention,' or employ or appoint a local school superintendent;" and (3) The Oklahoma Constitution prohibits the State Board from exercising their adjudicative authority outside of an individual proceeding.
¶28 Barnes's principal brief argues: (1) The OSDE denied Barnes's constitutionally protected due process rights and failed to follow state law and administrative procedures; and (2) Barnes is entitled to a declaratory judgment and he was not provided statutory and administrative due process. Petitioners' reply brief contains argument on the issues in their principal brief with an additional argument stating the present controversy is an exception to the doctrine requiring exhaustion of administrative remedies.
III(A). Barnes's Due Process Claim
¶29 We address Barnes's due process claim before addressing claims made by the school district. Barnes argues his Teaching Certification issued by the State Board was not subject to a "suspension" by the Board, and the process used by the Board for the suspension was constitutionally flawed. Barnes argues the Teaching Certification is a professional license and the Board may issue or grant the certificate and the Board may revoke the certificate, but the Board may not suspend the certificate. We disagree.
¶30 For some courts, an entity's power to revoke or remove a person's status granted by a permission, approval, certificate, or license from the entity also usually includes a lesser implied power of suspension when (1) the suspension is temporary and preliminary to, and integrated with, an authorized procedure for removal, and (2) the implied power of suspension has not been withdrawn by statute or constitution. For example, in 1909 this Court noted a split of authority in courts at that time and came to the following conclusion concerning a power to remove an official from office and a lesser included power to suspend.
[W]e feel constrained to adopt and follow that rule which appears to us will be more conducive to the administration of justice and the protection of the public against delinquent and corrupt office holders, and to hold that the power to remove for cause, after a hearing only, includes the power to suspend temporarily pending such hearing.
Maben v. Rosser, , , 681. Almost three decades later in Rose v. Arnold, , , 297, we cited Maben and observed: "This Court is committed to the view that the power to suspend does exist by implication." Then two decades after Rose in State ex rel. Livingston v. Maxwell, , , 693, we noted a power to suspend is a lesser and implied power possessed by an entity which also possessed a power to appoint and revoke.
¶31 In State ex rel. Livingston we also observed "one who claims that said authority is not vested with the power of suspension under the general rule of implication, has the burden of establishing his said claim." In other words, the power to suspend is presumed to be included in powers to remove and revoke, unless shown otherwise by a party. This lesser and included implied power to suspend pending a hearing in the instance of an office holder and the implied power in the context of removing a public employee as discussed in Maben, Rose, and State ex rel. Livingston are similar to a licensing authority suspending a license pending a hearing on a revocation of the license.
¶32 A state administrative agency has implied powers in addition to the powers expressly granted when such implied powers are necessary for the due and efficient exercise of the express powers. A statute creating an express power in the nature of an express affirmative duty normally creates an implied power necessary to fulfill that express affirmative duty. An express statutory power and duty by the State Board to exercise a revoking power concerning a teacher's certificate by the State Board of Education is consistent with an included lesser implied power of suspension by the State Board when exercised in a revocation proceeding.
¶33 The trial court relied on (C)(2) & 314.1 of the Oklahoma Administrative Procedures Act (OAPA); Oklahoma Administrative Code (OAC) § 210:1-5-6(e); and , 3-104, and all were in effect on the date of Barnes's emergency suspension. The OAPA, , contains the following language.
(C)(2). If the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined.
(C)(2). The OAPA also contains the following language.
As authorized by or pursuant to law, if an agency finds that the public health, safety, or welfare imperatively requires emergency action, has promulgated administrative rules which provide for such action and incorporates a finding regarding the emergency in its order, emergency actions may be ordered pending the final outcome of proceedings instituted pursuant to this article.
. This language allows for emergency provisional relief and points to an agency rule for such action.
¶34 The trial court also relied on , 3-104. The former section, 1-105, states the OSDE and State Board are part of state government and "charged with the responsibility of determining the policies and directing the administration and supervision of the public school system of the state;" and the State Board of Education "is that agency in the State Department of Education which shall be the governing board of the public school system of the state." The latter section, 3-104, includes the following concerning the State Board.
6. Have authority in matters pertaining to the licensure and certification of persons for instructional, supervisory and administrative positions and services in the public schools of the state subject to the provisions of Section 6-184 of this title, and shall formulate rules governing the issuance and revocation of certificates for superintendents of schools, principals, supervisors, librarians, clerical employees, school nurses, school bus drivers, visiting teachers, classroom teachers and for other personnel performing instructional, administrative and supervisory services, but not including members of boards of education and other employees who do not work directly with pupils . . . .
(6), as amended by Laws 2021, c. 563, § 5, eff. May 28, 2021. The trial court relied on this language when also relying on the Oklahoma Administrative Code (OAC).
¶35 The Okla. Admin. Code § 210:1-5-6, provides for "suspension and/or revocation of certificates," and states its application and authority for "governing suspension and revocation of certificates apply to the following: superintendents of schools, principals, supervisors, librarians, school nurses, school bus drivers, visiting teachers, classroom teachers and other personnel performing instructional, administrative and supervisory services in the public schools." § 210:5-1-6(a). It also contains the following provision.
(e) Emergency Action. Pursuant to , in the event the State Board of Education finds that public health, safety, or welfare imperatively requires emergency action, the State Board of Education may issue an emergency order summarily suspending a certificate pending an individual proceeding for revocation or other action. Such proceedings shall be promptly instituted and determined. Such an order shall include specific findings of fact specifying the grounds for the emergency action. Within three (3) business days of the issuance of the order by the Board, a copy of the order shall be sent to the holder of the certificate via certified or registered mail, delivery restricted to the certificate holder, with return receipt requested.
OAC § 210:1-5-6(e) (2020). This language in OAC § 210:1-5-6 appearing in paragraphs (a) & (e) was in effect on the date of the emergency application and emergency order suspending Barnes's certificate. Language addressing an "emergency order summarily suspending a certificate pending an individual proceeding for revocation or other action," was added to OAC § 210:1-5-6 several years prior to Barnes's emergency suspension. Generally, a regulation or rule promulgated by an administrative agency charged with administration of an act has force and effect of law. The OAC provision for a suspension in a pending proceeding for revocation was created in 2013, and the Legislature directed the State Board pursuant to to create rules for revocation proceedings.
¶36 We discern legislative intent in statutes by examining the plain and unambiguous language expressed. The plain language of these four statutes, (C)(2) & 314.1; , 3-104; and OAC § 210:1-5-6(e) is consistent with a common-law rule of a lesser implied power of suspension included within a greater power to revoke a license when a revocation proceeding has, or immediately will be, commenced in addition to the suspension. When the plain and unambiguous language of current statutes is consistent with the common law in this State, such as expressed by opinions herein from this Court dating from 1909 to 1960, then the Legislature has indicated the statutes and the common law are to be read together as one harmonious whole.
¶37 We also note current statutory authority recognizing a suspending power connected with a revoking power and the State Board's review of a teacher's certificate.
A teacher whose certificate was suspended by the State Board of Education pursuant to Section 3-104 of this title and Sections 314 and 314.1 of Title 75 of the Oklahoma Statutes shall be placed on suspension pursuant to the provisions of Section 6-101.29 of this title while proceedings for revocation or other action are pending before the State Board of Education. The provisions of this subsection shall not preclude the initiation of due process procedures in accordance with Section 6-101.20 et. seq of this title.
 (L) (as amended by Laws 2021, c. 343, § 1, eff. July 1, 2021). This language became effective a few days after the emergency suspension of Barnes's certificate on June 24, 2021, and is not a necessary element to our holding. However, this language does show a current legislative intent on this issue, and we note our conclusions are consistent with this recently enacted statutory language.
¶38 Barnes argued in the trial court the application for emergency suspension was not a suspension but a revocation because (1) a "revocation" was mentioned in the emergency application and (2) the State Board lacked authority for suspending a certificate. The trial court disagreed and read the State Board's administrative application as one for an emergency summary suspension in a proceeding where the State Board was also seeking a revocation with an opportunity for Barnes to appear at a hearing on a future date. We agree with the trial court. The authority cited by the trial court is sufficient to support the trial court's conclusion Barnes had failed to show a likelihood of success on the merits of his claim asserting the State Board lacked the authority to suspend his certificate.
¶39 The second prong of Barnes's due process argument concerns his lack of an opportunity to turn the hearing on the emergency summary application into a "full and fair hearing" on all of the claims raised against him. Barnes sought preliminary injunctive relief to provide him an administrative individual proceeding with sufficient notice to appear, argue, and present evidence prior to a "suspension." The State Board argued Barnes was not entitled to an opportunity for an evidentiary hearing in the context of an emergency summary application to suspend, but he was entitled to a full hearing at a later date on the State Board's application to revoke Barnes's certificate.
¶40 When this issue was argued in the trial court hearing, the opposing parties made different assumptions as to when Barnes was entitled to a hearing. Assuming Barnes had an interest protected by due process, the issue becomes when that interest is deprived by the administrative process. Barnes asserted the interest was deprived by the summary emergency hearing and its procedure, and Barnes's argument indicates any remedy he possesses after the summary hearing, e.g., a revocation hearing, is a post-deprivation remedy, and its adequacy measured by post-deprivation standards. However, the State Board indicated Barnes's due process interests were protected because he would receive a pre-deprivation remedy in the form of his revocation hearing after the emergency suspension, and this pre-deprivation remedy satisfied due process.
¶41 Thirty-four years ago in Short v. Kiamichi Area Vocational--Technical School District No. 7 of Choctaw County, , , we addressed the due process protection of property interests in a specific public employment context; and we held a discharged tenured teacher was entitled to a pretermination hearing with the local school board before the termination of employment became final. We relied on Cleveland Board of Education v. Loudermill, supra, and explained "before a pretermination hearing is required, it must be demonstrated that there is an existing right in continued employment." Further, "[t]his right must arise from some independent source, e.g. state law, sufficient to create a legitimate claim of entitlement." Due process protection applies to an identifiable property interest threatened by the administrative order: "A tenured teacher's right to continued employment may be construed as a property interest subject to due process protection if the Legislature has created the right through statutory enactment." Short and Loudermill require a cognizable legal interest possessed by Barnes which was taken or reduced by the summary emergency order.
¶42 If Barnes possesses an identifiable legal interest harmed by the summary emergency order, then we must determine if the process used was sufficient to protect that interest when Barnes's interest is weighed against the State's interest and a risk of an erroneous decision by the State when using the challenged procedure. We have explained the inquiry as "whether the individual possessed a protected interest to which due process protection applies and if so, whether the individual was afforded an appropriate level of process." We have also held minimum standards of due process require notice calculated to provide knowledge of the exercise of adjudicative power and an opportunity to be heard when administrative proceedings directly and adversely affect legally protected interests.
¶43 Barnes states he did not receive the proper three-day notice of the administrative suspension proceeding, but the authority he cites relates to a revocation proceeding and not a summary emergency suspension. The State Board states notice of the summary emergency application was provided by email to Barnes the day before the Board considered the emergency application, but the Board does not explain what this type of notice was attempting to accomplish in a constitutional sense. The trial court record shows Barnes received notice after the emergency suspension. Further, the trial court's order states with respect to the summary suspension: "The record indicates Barnes was given actual notice, including Barnes testifying that he received notice; thus his due process rights were not violated [and] Barnes's complaint regarding non-compliance with (C)(1) is in error with regard to the emergency suspension...."
¶44 A dialogue of the trial judge with counsel for both parties addressed identifying Barnes's legal interests which had been directly and adversely affected by the emergency suspension order and Barnes's remedy after the suspension hearing. Barnes's suspension was not for the purpose of suspending or ceasing payment of his salary and he continued to be a "superintendent." Barnes pointed to two interests which were affected by the emergency suspension (1) he was denied sufficient notice to give him an opportunity to present evidence and defend his reputation, and (2) he could not act as a superintendent due to being placed on administrative leave.
¶45 The U.S. Supreme Court has recognized interests other than a "mere loss of money" such as the risk of a party "having his reputation tarnished erroneously" due to a particular judicial procedure. However, due process "is flexible and calls for such procedural protections as the particular situation demands." The U.S. Supreme Court "has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause."
¶46 We need not hold that Barnes actually possesses the two asserted interests of reputation and continued decision-making in the context of the summary emergency proceeding. However, assuming for the purpose of Barnes's argument the two interests are protected in a present context by due process, the record before us is sufficient on appellate review for the Court to conclude the revocation hearing after Barnes's suspension is a sufficient remedy, and the trial court's order was not an abuse of discretion.
¶47 The trial judge discussed these principles during the hearing and her views were reflected in her subsequent order. The order states "Barnes is not entitled to an individual proceeding prior to the emergency suspension," "the Court finds there is an emergency demonstrated for the emergency suspension of the Certificate," and "Barnes is still entitled to the opportunity for a full and fair hearing prior to any revocation of the Certificate." Barnes's responses to these concepts in the trial court and also in his appellate brief are that the factual allegations made against him did not constitute "a legitimate emergency" and they were false.
¶48 The State Board's emergency order of suspension adopts assertions made in the application for a summary order. The order states the school district hired Barnes as superintendent in August 2019, and certain issues developed during his tenure. One was a violation issued in April 2021, by the Oklahoma City Fire Department which indicated a majority of the sprinkler system in a high school was nonfunctional, and this condition was known by the school district for more than sixty days prior to the citation.
¶49 Additional assertions include: The school district had chosen to suspend food services to children while schools were closed due to COVID-19 conditions while other schools in the state continued food service during closures; The school district resumed food services after "facing Department and Board intervention including potential accreditation and funding consequences; The school district "offered no in-person supports of any kind to students with disabilities" when needed due to COVID-19 closure; Staffing of special education teachers was impacted and "[Barnes] has fired the only severe/profound teacher we had at the high school without a replacement, he fired a deaf ed interpreter, and we have had at least one other special education teacher quit without any new hires;" "It is the Department's understanding that the District's current plan for delivering alternative education for at-risk students consists solely of requiring these students to use an online learning platform . . . without providing District teachers or the direct supports school districts are required to provide for alternative education students;" Emergency funds in the amount of $17,779,545.15 had been allocated to the school district "to make improvements and repairs to school facilities such as to ensure with fire code and sprinkler systems so as to protect the health and safety of persons entering school facilities . . . [t]his, however, Barnes failed to do;" Federal funds were made available "to reduce impacts of learning loss to students as a result of disruptions to learning caused by the pandemic, including extending the school year, increasing opportunities for learning, and increasing summer school programs . . . [a]gain, Barnes has not increased such services with the federal fund claims submitted [by the school district] to the OSDE."
¶50 Additional assertions include: The school district "objected to continuing to pay its support (non-certified) employees while public sites were closed due to the COVID-19 pandemic emergency, despite provisions in law authorizing and encouraging school districts to do so; Certified employees were allowed to use the 'snow days' due to severe winter weather but all support employees were required to report to work although no students were present;" "For the last two years, the District, under Barnes's leadership, is the only school district in the State of Oklahoma that collectively bargains with employees to not successfully negotiate employment agreements with the personnel bargaining unit in the school district," and "it is the Department's understanding that written teacher contracts for FY2021 were not executed by the District pursuant to ."
¶51 Additional assertions are: The OSDE began receiving communications from school district employees they were being denied access to certain accounts maintained by the school district through employee payroll deductions pursuant to state statute, these accounts were used by employees to pay for medical care, and they were denied access because "the accounts were in arrears;" Barnes "attributed all payroll problems concerning these accounts to the District's selected vendor" and he stated no corrective action was needed at that time; but "complaints and allegations regarding employee benefit accounts being in arrears have continued;" During Barnes's two years as superintendent "the District has sustained a staggering thirty-seven percent (37%) loss of staff;" and at the school district's June 14, 2021, meeting, the agenda shows twenty-one certified employee departures and one employee new hire.
¶52 Additional assertions are: "Under Barnes's leadership, the district has consistently had governance and financial issues, which according to an audit included numerous adjusting entries to the District's books in order to attempt to balance bank records," "checks cleared by adjusting entries done in batches and in several instances checks were cleared twice," transfers to Teacher Retirement Clearing Account not coded as general fund expenditures, Teacher Retirement System late penalties not properly coded, $169,006.80 in investment interest received and not coded as revenue, $144,837.97 of returned items needed reconciliation bank statements and an activity fund not properly balanced and kept up to date.
¶53 The State Board asserted upon an inquiry why certain programs and instruction were not being provided to students, "Barnes has misrepresented that funds available in the District have been reduced;" but the general operation funds available for 2019 were $33,296,487.76, and in 2020 an amount of $34,741,925.21, and federal COVID-19 emergency funds available to the district in 2020-2021 "add more than $17.5 million to the District's ordinary available fund totals."
¶54 Barnes states these reasons do not constitute an emergency. The State Board indicated the total weight of the circumstances shows Barnes's leadership failed to provide instruction and programs for students as required by law. Barnes requested a preliminary injunction, and a court sitting in equity exercises discretionary power in accordance with equitable principles and in light of all circumstances. When assessing a "totality of circumstances," or "the sum of an evidentiary presentation," then the totality or the sum "may well be greater than its constituent parts." This appears to be the approach taken by the State Board, the sum of identified problems qualifies as an emergency and requires immediate attention and correction.
¶55 A totality-of-circumstances analysis for Barnes's requested judicial equitable relief includes not only the material presented for his emergency suspension before the State Board, but also the circumstances present in the equity proceeding itself. For one example, Barnes complains both his lack of an opportunity to immediately defend his public reputation and a post-suspension revocation hearing are inadequate to defend his reputation. However, Barnes brought this proceeding in the District Court a few months prior to the suspension and many of the same issues were part of either his petition or the motion to dismiss filed by the State Board in response to his petition. In other words, he complains he did not get an opportunity to publicly defend issues raised in the suspension application when he previously raised the issue of his conduct as part of a public record in this proceeding. Barnes is currently participating in a public district court proceeding with opportunities for him to raise issues and champion his prior conduct. The State Board also explained he possessed a remedy to champion his cause in a revocation hearing.
¶56 In Gilbert v. Homar, the U.S. Supreme Court assumed that an employee's temporary suspension of pay infringed a protected property interest. The Court stated it has balanced distinct factors in this type of controversy: the private interest that will be affected by the official action, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards and finally, the Government's interest.
¶57 In a unanimous decision by the Court, Gilbert noted if an employee receives a prompt post-suspension opportunity to be heard the deprivation of the due process interest will be minimal, and will be outweighed when a strong government interest is present, such as felony charge against an employee. A similar conclusion is proper in this case, assuming for the purpose of argument Barnes possesses his two asserted due process interests in the context of the summary proceeding, the nature of the allegations against him concerning proper education for students in the district and immediate financial accountability of a public purse outweigh his two interests since he possesses the opportunity to a prompt administrative revocation hearing.
¶58 Barnes failed to show a likelihood of success on the merits of his claim that a due process violation occurred. Barnes failed to show an abuse of discretion by the trial court when he was denied a preliminary injunction.
III(B). Barnes's Exhaustion of Remedies
¶59 The trial court's order "finds that Barnes has failed to exhaust his available administrative remedies provided by the OAPA." The order also states "Barnes has the opportunity for a full and fair individual proceeding under the OAPA, that is the procedure available to him, he must use it to exhaustion." Barnes's appellate reply brief argues he may challenge an agency rule by declaratory judgment, and "if the question of substantive or procedural due process is raised, if there is a constitutional question that will remain no matter what the agency does, . . . if the appeals would be futile . . . or if the agency actions could cause irreparable injury to the party" then exhaustion is not required. He argues his administrative remedy would be ineffective or futile, and "revocation of the Superintendent's license . . . would constitute irreparable harm."
¶60 The authority relating to administrative exhaustion cited by Barnes is applied incorrectly in this controversy. Five years prior to Barnes filing his District Court action, we explained in Robinson v. Fairview Fellowship Home for Senior Citizens, Inc., , , a fact-finding associated with interpretation and application of statutory authority consistent with a constitutional provision in an administrative proceeding may obviate a need to adjudicate unconstitutionality of a statute or an official's conduct based upon that interpretation in a District Court proceeding. Id. ¶ 10, 371 P.3d at 482.
¶61 Barnes states the allegations of fact made against him in the application for emergency suspension were not correct. The trial court indicated he can challenge the veracity of the allegations in a future administrative revocation hearing. An administrative hearing addressing facts relating to the instruction, educational programs, and finances of the school district and Barnes's participation in these allegations may be determined in an administrative context, and obviate the need for a District Court adjudication of a constitutional claim.
¶62 We recently discussed requiring exhaustion when the administrative proceeding could be used to develop the record of facts necessary for a constitutional challenge to an official's application of statutory authority, as opposed to a challenge based upon facial unconstitutionality of a statute. Barnes does not dispute that a revocation hearing on the issue of a Teaching Certification is within the authority of the State Board. Barnes's argument does not show the scope of an administrative revocation hearing would necessarily be limited by statute or otherwise, or would become ineffective for the purpose of creating a factual record to support any of his constitutional claims against the State Board.
¶63 Barnes has not shown an abuse of discretion by the trial court when it ruled he possessed an administrative remedy he had failed to exhaust, and he was required to exhaust that remedy by using an available revocation hearing before the State Board concerning his Teaching Certification.
¶64 Barnes failed to show a likelihood of success on the merits of his claim that his administrative remedy was inadequate.
III(C). Claims Asserted by School District
¶65 The school district challenged the authority of the OSDE and the State Board. The school district objected to the OSDE and State Board requiring school district representatives to appear before them and discuss concerns relating to the school district. The school district also challenged any exercise of authority by respondents resulting in a negative impact upon the school district unless the exercise of authority was pursuant to an Oklahoma Administrative Procedures Act individual proceeding. The school district's appellate brief argues: there are no statutory powers for the State Board to operate local school districts or carry out the duties of local boards of education.
¶66 Petitioners' petition in the District Court states the school district was placed "on probation," and attached a letter from the State Superintendent of Public Instruction and Chair of the State Board of Education. The letter stated the school district was assigned "accredited With Probation," and accredited status must be maintained to receive state funding. The letter explains that the school district has ninety days to successfully implement actions listed in the letter. The letter invites representation from the school district, specifically Superintendent Barnes, and a specified member of the school board to appear at a regularly scheduled State Board meeting six days after the date of the letter.
¶67 The supplemental motion for a preliminary injunction states that on July 12, 2021, the State Board had ordered a "full state intervention." The school district argues "There is no hierarchy as between the four entities," OSDE, State Superintendent of Public Instruction, local board of education of school districts, and superintendent of a local school district. In summary, the school district argues: "local boards of education [are] to run local school districts," a State Superintendent has no authority "to employ or appoint a local public school superintendent or any other employee," and "there are no statutory powers for a State Board to operate local school districts or carry out the duties vested in the local boards."
¶68 The school district's challenge to the authority of the OSDE relies upon an assertion of the OSDE's lack of statutory authority to act, and three opinions involving the school district. The school district argues it must receive an individual administrative hearing before it has any change to its status by the OSDE. The school district relies on Western Heights Independent School District No. I--41 of Oklahoma County v. State ex rel. Oklahoma State Department of Education, , ; Western Heights Independent School District No. I--41 v. State ex rel. Oklahoma Department of Education, , ; and Western Heights Independent School District No. I--41 of Oklahoma County v. State ex rel. Oklahoma State Department of Education, , .
¶69 In Western Heights Independent School Dist. No. I--41 of Oklahoma County v. State ex rel. Oklahoma State Department of Education, , , the OSDE was responsible for implementing the federal No Child Left Behind Act, 20 U.S.C. §§ 6301 et seq., and if schools failed to meet the Academic Performance Index (API) benchmarks for the implementation, then they were required to make Adequate Yearly Progress (AYP) reports and were subject to sanctions pursuant to a section in the Oklahoma Administrative Code if yearly progress was not made. Data reports were provided to school districts for review and reporting discrepancies, and regulations stated school districts "may appeal AYP determinations in the Data Reports."
¶70 The school district's administrative appeal was denied because it was not "based on substantial or statistical criteria." The school district argued it was entitled to an Oklahoma Procedures Act Administrative proceeding. The OSDE disagreed. The trial court dismissed the district court petition because it was not filed within thirty days of the OSDE order, and this order was affirmed on appeal. The appellate court indicated the school district was entitled to an administrative individual proceeding, but had missed the deadline for filing review of the OSDE's order in District Court.
¶71 School district argues the doctrine of "the law of the case" applies with Western Heights, , , and the two additional opinions with Western Heights as a party. OSDE argues any of the language or references in the three opinions suggesting or requiring an administrative individual proceeding is merely dicta and not applicable. Of course, dicta is language not part of the ratio decidendi of a court's opinion; and dicta is not binding as part of the law of the case, and does not possess persuasive value. However, we need not examine the language in these opinions for identifying dicta, since the school district's use of the doctrine of the law of the case is not applicable for another reason.
¶72 The settled-law-of-the-case doctrine operates to bar relitigation of issues decided and involved by implication in a prior appellate opinion when occurring upon a record in the same case or controversy. This doctrine does not apply to the three cited opinions because the present controversy is not based upon the same record and proceeding as the three prior District Court proceedings.
¶73 The OSDE is bound by the final judgments in Western Heights, , , and the other litigation. However, a binding effect from a prior case cannot extend to issues and facts which are, or are deemed to be, outside of the judgment roll of the prior case as determined upon a party producing an official court record or other appropriate substitute for the record of the prior case and enforcement in the current proceeding. The record before us indicates the school district does not rely upon a judgment roll in a prior case, but upon the language appearing on the face of the published opinions for an offensive, rather than defensive use, of adjudications in the former cases involving the school district. If we assume for the purpose of this argument the school district's procedure is proper, then a binding or persuasive use of the opinions could not occur due to the nature of the school district's claims and the injunctive remedy sought by the school district.
¶74 A procedural due process right such as that raised by petitioners, is defined by, or identified with, the "precise nature" of the party's interest threatened by the State, and the "adequacy of the State's process" or specific procedure for deprivation of that specific interest. The face of the opinion in Western Heights, , , does not address the then available State process as it relates to a specific legal inadequacy necessitating an administrative individual proceeding for the school district's specific interest. If we assume for the purpose of argument the nature of the school district's interest is protected by procedural due process, then the school district must still identify the inadequacy of available State process showing the particular process sought by the school district is the proper process for the school district's specific protected interest. This is so because: "The Due Process Clause does not, by itself, mandate any particular form of procedure . . . . Due process is flexible, and a court must evaluate a challenge to due process based on the facts of a particular situation."
¶75 These principles are important to the controversy for two reasons: (1) A procedural due process violation is based upon the absence or inadequacy of State procedure for the legal interest, and (2) Equity will not be used to thwart an adequate, clear, and certain statutory remedy which was not sought by a party possessing a statutory right enforceable by the statutory remedy. When the trial court denied the preliminary injunction request, it noted the school district's action in declining an invited opportunity to meet, discuss, or report with the State Board.
¶76 The trial court stated the following findings and conclusions of law in its order with respect to the school district's challenge to the exercise of authority by the State Board and the OSDE.
. . . Pursuant to and 3-104, OSDE has the authority to annex, deny accreditation, place on probation and take any other action on the operation of the District. Further, as a matter of law, the State Board has the authority, pursuant to (13), to require administrators to report, by writing or in-person, to address any concerns and if those individuals fail to do so, action can be taken against them. The record in this case shows that Barnes was given the opportunity to appear before the State Board on behalf of the District, he relied on the advice of legal counsel and he cannot now use that advice as a shield to claim he did not have an opportunity. . . . 
. . . Pursuant to , the State Board and the State Superintendent have the authority to compel the District to answer questions about how it is being run. . . .
. . . The record is clear that Respondents did not adjudicate the District's accreditation status at the State Board's March 25, 2021 meeting. This is further made clear by the March 30, 2021 correspondence sent to the District, the correspondence between the parties from then, and is the very purpose of why the District and Barnes were invited to the April 9, 2021 meeting of the State Board. Barnes's testimony of having prior experience as a school board member and as a school superintendent led the Court to question the veracity of his claim to not understand the plain language of the minutes and notice he testified to receiving and reading. As to the documents relied upon at that meeting, the documents that were used during the meeting were publicly available or under the custody and control of the District. Petitioners did not offer any testimony that anyone outside of Barnes had difficulties accessing published documents. . . . 
. . . Oklahoma law is clear that Respondents have statutory and constitutional authority to take the actions they have, follow the process they have, including to appoint or employ a superintendent or interim superintendent for the District, to operate the District and to conduct a full state intervention of the District if there is a factually supported basis. , 3-104, 3-104.3, 3-104.4; Okla. Const. art. 13, § 5. To rule otherwise would render the State Board's role superfluous. 
¶77 The Oklahoma Constitution states: "The Legislature shall establish and maintain a system of free public schools wherein all the children of the State may be educated." Okla. Const. Art. 13 § 1. This Court has explained the Legislature "has plenary power to create, abolish or change school districts." The Oklahoma Constitution also states: "The supervision of instruction in the public schools shall be vested in a Board of Education, whose powers and duties shall be prescribed by law." Okla. Const. Art. 13 § 5. Additionally, (B) states "The State Board of Education is that agency in the State Department of Education which shall be the governing board of the public school system of the state." The power of the Legislature to declare under what conditions and limitations a school may voluntarily or involuntarily cease to function cannot be doubted. The Legislature possesses power to delegate authority to the State Board to determine facts and enact rules within prescribed legislative standards.
¶78 The trial court made a finding the school district and Barnes were invited to a meeting of the State Board to discuss the Board's concerns relating to the District. The school district and Barnes united in objecting to being invited to the State Board's meeting. In I.T.K. v. Mounds Public Schools, , , we explained the Oklahoma Administrative Code recognizes the importance of a superintendent's daily role for a properly functioning school district, e.g., "a superintendent is a public day-to-day representative for the board of education," "a superintendent has a duty to implement the written policies of the board of education," and "a superintendent implements a policy sound in nature and functional for the management and operation of the district's business."
¶79 An additional role of a school superintendent is that of implementing a public policy which has been statutorily enacted with a State Board possessing a role supervising a local school district's (and superintendent's) implementation. The Legislature's determination of public policy by a statutory enactment is followed by the State Board of Education, and implemented by a local school district pursuant to the extent of supervision possessed by the State Board either express or implied. The Legislature has determined that a school district providing information required by the State Board is important for the supervisory role of the State Board because a school districts's failure in this regard may result in the State Board withholding "all state funds" pursuant to (13).
¶80 The Oklahoma Administrative Code has a provision stating if a school site is placed on warning or probation then representatives from the school "will meet" with state personnel prior to a report to the State Board. The OSDE references OAC § 210:35-3-201, which states as follows.
210:35-3-201. Statement of the standard
(a) Each public school site, including charter school sites, must submit an Application for Accreditation to the Accreditation Standards Section of the State Department of Education by the due date specified on the Application. School sites are accredited for one year. An accredited school site shall meet all applicable regulations and statutory requirements at the beginning of and throughout the school year.
(b) Accreditation status of school sites shall be classified according to the following categories:
(1) Accredited With No Deficiencies--All standards are being met.
(2) Accredited With Deficiencies--A school site fails to meet one or more of the standards but the deficiency does not seriously detract from the quality of the school's educational program.
(3) Accredited With Warning--A school site fails to meet one or more of the standards and the deficiency seriously detracts from the quality of the school's educational program.
(4) Accredited With Probation--A school site:
(A) consistently fails to remove or make substantial progress towards removing all deficiencies noted the previous year; and/or,
(B) consistently violates regulations; and/or,
(C) deliberately and unnecessarily violates one or more of the regulations.
(5) Nonaccredited--The school site is no longer recognized by the State Board of Education.
(c) If a school site is placed on warning or probation, the school board and administration will meet with one or more representatives from the Accreditation Section to review their accreditation status. After the review from the representative(s), a determination will be made concerning warning, probation or nonaccredited status. The Accreditation Section will then present a recommendation to the State Board of Education.
OAC § 210:35-3-201 (amended by 34 Okla. Reg. 1103, Sept. 11, 2017). An agency's administrative rule has the force and effect of law when properly created, its content is within the express or implied authority of the agency granted by statute, and the rule is consistent with Federal and State Constitutions. The Administrative Code previously specified a time for a school implementing standards, but the provision was revoked in 1998, and timing is now provided by a statute which works with this rule.
¶81 The administrative rule works with .4(C), which states as follows.
C. Except as otherwise provided, schools shall meet the accreditation standards as a condition of continued accreditation. Nothing herein shall be construed as preventing changes to the adopted standards by the State Board of Education pursuant to the Administrative Procedures Act. The accreditation standards shall provide for warnings, probation or nonaccredited status for schools that fail to meet the standards. The Department shall investigate a complaint of failure to provide educational services or failure to comply with accreditation standards within thirty (30) days of receiving the complaint. If the Department determines that a school has failed to comply with the accreditation standards, the Department shall report the recommended warning, probation or nonaccredited accreditation status to the State Board of Education within ninety (90) days. If a school does not take action to comply with the accreditation standards within ninety (90) days after a report is filed by the Department, the Board shall withdraw accreditation for the school. The State Board accreditation regulations shall provide for warnings and for assistance to schools and school districts whenever there is reason to believe a school is in danger of losing its state accreditation.
.4(C) (as amended through May 28, 2021) (emphasis added). The combined procedure of OAC § 210:35-3-201 and .4(C) involves warnings, probation, and also a school district's loss of accreditation.
¶82 When an elementary school district (a district with grades kindergarten through eight and not designated as independent) fails to satisfy accreditation standards, then the State Board of Education may issue an administrative order placing the district under full state intervention pursuant to the procedure in , which provides for a public hearing and an appeal to the district court. Title 70 Oklahoma Statute § 104.4 provides authority for the State Board to annex a school district to other districts upon the loss of accredited status.
D. If one or more school sites fail to receive accreditation as required pursuant to this section or subsequently lose accreditation, the State Board of Education shall close the school and reassign the students to accredited schools within the district or shall annex the district to one or more other districts in which the students can be educated in accredited schools.
A more general grant of authority is made stating the State Board "shall take action as required by this act to ensure that students affected are enrolled in schools that are able to maintain state accreditation." .3 (B) (emphasis added). The term "shall" is ordinarily interpreted as a command or mandate; however directory construction rather than mandatory for the word "shall" may be made upon a finding of legislative intent for such construction.
¶83 Lesser included sanctions specified by statute include warnings and probation for a school district. For example, .4(C) states in part: "The accreditation standards shall provide for warnings, probation or nonaccredited status for schools that fail to meet the standards." The Legislature requires the State Board to provide "assistance" to a school in danger of losing accreditation: "The State Board accreditation regulations shall provide for warnings and for assistance to schools and school districts whenever there is reason to believe a school is in danger of losing its state accreditation." .4(C).
¶84 Petitioners argue there is no "hierarchy" in the relationship between State and local authority, so the State Board may not substitute a temporary and interim superintendent as a condition of the school district's probationary status without an express statutory authorization. The argument rests upon a theory similar to one we expressly rejected in 1947.
¶85 In School District No. 25 of Woods County v. Hodge, , , we explained Okla. Const. Art. 13, § 5 vests in the State Board of Education the power of supervision of instruction in the public schools of Oklahoma, and these powers and duties "shall be prescribed by law." A party argued in Woods County an "additional grant of power and authority apart from supervision of instruction" to change, alter, and annex local school districts could not be given to the State Board because the additional power was not within the scope of supervision of instruction. We rejected the argument.
¶86 We explained: "The Constitutional provision vesting the power of supervision of instruction in the Board of Education is not a limitation, but a grant of power." In Woods County a party argued the absence of a power to annex and alter school districts in Art. 13 § 5, meant such power could not be statutorily conferred on the State Board, and we rejected the argument. Petitioners argue there is an absence of express statutory language in Title 70 stating the State Board may require a temporary superintendent as a condition of probation. They argue this absence means the State Board may not impose an interim superintendent without the local school district's permission. We reject the argument.
¶87 Again, in I.T.K. v. Mounds Public Schools, supra, we explained the importance a superintendent has in a daily role to create a properly functioning school district. The State Board is given express powers to place a school district on probation and "shall take action as required by this act to ensure that students affected are enrolled in schools that are able to maintain state accreditation." When the State Board requires an interim or temporary superintendent as a necessary solution to preserve a school district's accreditation, then the State Board is exercising a necessarily implied and lesser power to effectuate a statutory mandate.
¶88 Petitioners failed to show a likelihood of success on the merits on their claim the State Board lacked authority to place the school district on probation with a condition requiring an interim superintendent.
¶89 The statutes and provisions of the administrative code raised by the parties provide procedures for probation and loss of accreditation, but do not provide for an administrative individual proceeding when the State School Board is providing a warning, or imposing a probation, or a loss of accreditation status. The preserved argument before the trial court was that the school district was put on probation with conditions, and the school district has a due process right not to be put on probation status without an administrative individual proceeding. The language in the statutes, including time limits for corrective relief and authority of the State Board, shows a high degree of authorized supervision by the OSDE and the State Board. This language appears to assume a local school district will work with State officials in implementing the interpretation of the legislative will made by the State Board instead of litigating the State Board's interpretation by requiring the State Board to satisfy a burden of proof in an individual proceeding. Not every action by a State agency is authorized by an order issued in an Oklahoma Administrative Procedures Act individual proceeding: "The Legislature recognizes that agencies take actions and make decisions, other than by individual proceedings for which the right to judicial review is intended to be exercised pursuant to other laws." .
¶90 The power and authority placing the school district on probation status was pursuant to a statutory power granted the State Board by the Legislature. The State Board may not implement the legislative will by the exercise of power that is arbitrary and capricious, and judicial review of an arbitrary and capricious exercise of that power by respondents is not contingent upon the school district having a right to an individual proceeding.
¶91 A likelihood of success on the merits of a claim asserting a right to an individual proceeding and obtaining an injunction must be based upon a showing the rule and statutory procedure imposing the sanction on the school district are inadequate to protect a legal interest possessed by school district and that interest is legislatively intended to be protected by an administrative individual proceeding. This showing was not made in the trial court, and the scope of our holding on this point is limited to petitioners failing to make the required showing to obtain an injunction. Petitioners failed to show a likelihood of success on the merits of their claim they were entitled to an administrative individual proceeding prior to the school district being placed on probation.
IV. Conclusion
¶92 We hold the Superintendent failed to show a likelihood of success on the merits of his claim that a due process violation occurred, or a likelihood of success on the merits of his claim that his administrative remedy was inadequate, and failed to show he was entitled to a preliminary injunction.
¶93 We hold the School District failed to show likelihood of success on the merits on a claim the State Board lacked authority to place the school district on probation with a condition requiring an interim superintendent, and failed to show a likelihood of success on the merits of a claim the school district was entitled to an administrative individual proceeding prior to the school district being placed on probation, and school district failed to show it was entitled to a preliminary injunction.
¶94 The order of the District Court is affirmed.
¶95 ALL JUSTICES CONCUR.
FOOTNOTES
 Counsel filing a timely entry of appearance in the appeal are listed in the Court's opinion as appearing in the appellate courts. State ex rel. Oklahoma Bd. of Med. Licensure & Supervision v. Pinaroc, , n.1, , 116.
 ROA, Okla. Sup. Ct. No. 120,034, at p. 315, Tr. at p. 9.
 of the Oklahoma Administrative Procedures Act provides for an administrative individual proceeding.
 Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Daffin v. State ex rel. Okla. Dep't of Mines, , ¶ 20, , 748 ("Loudermill held that a state legislature which conferred a property interest in employment, i.e., tenure for teachers, could not constitutionally authorize the deprivation of that interest without appropriate procedural safeguards.").
 ROA at 719, Journal Entry, Aug. 6, 2021 (Order references hearing on July 8 2021, and states the motion for temporary restraining order is denied).
 Andrew v. Depani-Sparkes, , ¶ 9, , 214.
 Dopp v. Kirkendall, , ¶ 16, , 294.
 Jennings v. Elliott, , , 70 ("The only office of a restraining order is to restrain the party against whom it is issued pending a hearing for a temporary injunction. It is merely an order intended to preserve the present status until a hearing may be had upon a pending application for a temporary injunction...."); (D) ("When the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a temporary injunction and, if the party does not do so, the court shall dissolve the temporary restraining order."); Owens v. Zumwalt, , ¶ 7, 503 P.3d 1211, 1214 ("A preliminary injunction preserves the status quo until there can be a final determination of the controversy.").
 (D).
 Id., § 1384.1 (E), ("This section shall not apply to temporary restraining orders in actions for a divorce, alimony without a divorce, separate maintenance, an annulment, custody, or similar matters, guardianship or juvenile proceedings, or to proceedings brought pursuant to special statutes that provide alternate procedures for the obtaining of temporary restraining orders or temporary injunctions.").
 We need not address various circumstances when an exercise of judicial discretion adjudicating a temporary restraining order (TRO) may be reviewed in this Court. But see, e.g., City of Midwest City v. Harris, , (writ of prohibition issued to prevent enforcement of a TRO).
 , Ch. 15, App. 1, Okla. Sup. Ct. R. 1.60(c) ("Orders of the district court that are interlocutory and may be appealed by right in compliance with the rules in this part are those that: . . . (c) Deny a temporary injunction, grant a temporary injunction except where granted at an ex parte hearing, or discharge, vacate or modify or refuse to discharge, vacate or modify a temporary injunction....") (citing (b)(2), 993(A)(2)).
 (b)(2): "(b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof: . . . 2. An order that discharges, vacates or modifies or refuses to vacate or modify a provisional remedy which affects the substantial rights of a party; or grants, refuses, vacates, modifies or refuses to vacate or modify an injunction; grants or refuses a new trial; or vacates or refuses to vacate a final judgment."
 ROA Vol. III, p. 1018.
 Kelsey v. Dollarsaver Food Warehouse of Durant, , (Court used plain meaning and English grammar to determine meaning of language in trial court's order); Hicks v. Hicks, , , 832-33 (when construing the judgment of a court, effect should be given to every word and part thereof, including such effects and consequences that follow the necessary legal implications of its terms; and when language is not clear a judgment should be construed so as to carry out the evident purport and intent of the action); Timmons v. Royal Globe Ins. Co., , nn.5-6, , 591-92 (meaning of a final judgment is derived from the terms expressed in the instrument as construed with other parts of the judgment roll).
 Edwards v. Andrews, , ¶ 7, , 1047 ("this Court will generally 'not review a trial court order which overrules a motion for summary judgment'"); Progressive Direct Ins. Co. v. Pope, , n.11, , 693, ("an order denying a motion for summary judgment is not an interlocutory order immediately appealable by right nor could the order be certified for review by certiorari in advance of judgment").
 Andrew v. Depani-Sparkes, , ¶ 14, , 216-17 (explaining House v. Town of Dickson, , , and LCR, Inc. v. Linwood Properties, , ).
 : "Any determination of rights, status, or other legal relations shall have the force and effect of a final judgment, and it shall be reviewable in the same manner as other judgments." Cf. Tulsa Indus. Auth. v. City of Tulsa, , ¶ 16, , 121-22 ("Clearly, if a public body's declaratory judgment controversy is justiciable, a qui tam taxpayer is not entitled to intervene, has no right of action . . . and has no standing as a qui tam taxpayer to challenge a judgment on the merits of the justiciable controversy.").
 Knight ex rel. Ellis v. Miller, , (dismissal of the trial court petition for declaratory judgment affirmed on appeal because the action was not a case of actual controversy required by ).
 :
District courts may, in cases of actual controversy, determine rights, status, or other legal relations, including but not limited to a determination of the construction or validity of any foreign judgment or decree, deed, contract, trust, or other instrument or agreement or of any statute, municipal ordinance, or other governmental regulation, whether or not other relief is or could be claimed, except that no declaration shall be made concerning liability or nonliability for damages on account of alleged tortious injuries to persons or to property either before or after judgment or for compensation alleged to be due under workers' compensation laws for injuries to persons. The determination may be made either before or after there has been a breach of any legal duty or obligation, and it may be either affirmative or negative in form and effect; provided however, that a court may refuse to make a determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding.
 Macy v. Okla. City Sch. Dist. No. 89, , ¶ 11, , 807.
 Indep. Sch. Dist. No. 52 of Okla. Cty. v. Hofmeister, , ¶ 17, n.17, , 485 ("Mandamus is tried as in civil actions and the merits may be adjudicated using the District Court Rule 13 procedure for summary judgment or summary disposition."); cf. Shamblin v. Beasley, , n.25, , 1208 ("Other jurisdictions, much like Oklahoma, do not differentiate--for summary judgment purposes--between equity suits and actions at law."); Assessor of Roger Mills Cty. v. Unit Drilling Co., , (District Court declaratory judgment "after considering the summary judgment paperwork of the parties" affirmed on appeal).
 In re Guardianship of Berry, , ¶ 41, , 793 ("If the substance of an interlocutory order contains both adjudications of issues that are immediately appealable and adjudications on other issues that are not immediately appealable, then only that part of the order adjudicating immediately appealable claims may be reviewed on an immediate appeal of the interlocutory order.").
 Bailey v. State ex rel. Bd. of Tests for Alcohol & Drug Influence, , ¶ 21, , 852.
 State ex rel. Okla. State Bd. of Med. Licensure & Supervision v. Rivero, , ¶ 41, , 52.
 Crawford ex rel. C.C.C. v. OSU Med. Tr., , n.1, , 829 (citing In re Guardianship of Stanfield, , ¶ 27, , 1001).
 Scott v. Okla. Secondary Sch. Activities Ass'n, , ¶ 16, , 896 ("Granting or denying injunctive relief is generally within the sound discretion of the trial court and judgments issuing or refusing to issue an injunction will not be disturbed on appeal unless the lower court has abused its discretion or its decision is clearly against the weight of the evidence.").
 Murlin v. Pearman, , ¶ 17, , 1097.
 Johnson v. Ward, , , 188.
 In re Estate of Downing, , ¶ 10, , 12; In re Estate of Foresee, , ¶¶ 7-8, , 865.
 Bowlin v. Alley, , , 370 (explaining a temporary or preliminary injunction may issue pending a final adjudication of a controversy, and such injunction is issued in a summary proceeding with a less stringent burden of proof than an adjudication on the merits).
 Revolution Res., LLC v. Annecy, LLC, , ¶ 12, , 1141.
 In re L.M.A., , n.6, , 563 (citing Lay v. Ellis, , n.3, (petition in error will be deemed amended to include errors set forth in the propositions in the brief-in-chief, provided that in no event may the appeal be broader in scope than allowed by [Okla.Sup.Ct.] Rule 1.26(a)); In re Adoption of M.J.S., , n.12, ("Assignments of error not argued or supported in the brief with citations of authority are treated as waived.").
 Okla. Const. Art. 2 § 7: "No person shall be deprived of life, liberty, or property, without due process of law."
 Generally, constitutional rights are personal and not asserted vicariously. Forest Oil Corp. v. Corp. Comm'n of Okla., , , 788. Petitioners' preserved appellate arguments do not argue in support of a cognizable joint legal interest possessed by Barnes and the school district which was adversely affected by the trial court's order, and individually addressing petitioners' arguments does not appear to alter our analysis. Barnes and the school district may both state they want relief in the nature of Barnes continuing as superintendent unfettered by State interference, but two parties seeking an identical remedy does not show an identical cause of action or legal interest. Tulsa Indus. Auth. v. City of Tulsa, , n.24, , 121 (contrasting a right to a remedy and a cause of action).
 State ex rel. Livingston v. Maxwell, , , 693 (discussing Jones v. Bayless, , ); cf. Burnap v. United States, 252 U. S. 512, 515, 40 S.Ct. 374, 64 L.Ed. 692 (1920) ("The power to remove is, in the absence of statutory provision to the contrary, an incident of the power to appoint . . . [and] [t]he power of suspension is an incident of the power of removal.").
 Indep. Sch. Dist. No. 52 of Okla. Cty. v. Hofmeister, , ¶ 37, 473 P.3d at 492 (quoting Farmacy LLC v. Kirkpatrick, , ¶ 20, 394 P.3d 1256, 1261).
 Id.
 Except as otherwise specifically provided in , all agencies must comply with the provisions of Article I and Article II of the OAPA ((B)), and the State Board of Education is exempt from Article I of the OAPA with respect to prescribing subject matter standards as provided for in .6a. (A)(11).
 Okla. Admin. Code § 210:1-5-6 was amended in 2021 effective on Aug. 6, 2021, by 38 Okla. Reg. 921, with a change to paragraph (b)(4), and this amendment did not alter or amend the quoted language in § 210-1-5-6 (a) and (e).
 Okla. Admin. Code § 210-1-5-6 (2013) (amended at 30 Okla. Reg. 1592, July 11, 2013).
 Estes v. ConocoPhillips Co., , ¶ 10, , 523 ("Administrative rules are valid expressions of lawmaking powers having the force and effect of law."); Coppola v. Fulton, , , 1296; Rotramel v. Pub. Serv. Co., , , 1017.
 State ex rel. Okla. Dep't of Health v. Robertson, , ¶ 6, , 877--78 ("Legislative intent governs statutory interpretation and this intent is generally ascertained from a statute's plain language.").
 Prettyman v. Halliburton, , , 580-81 (The Legislature is presumed to know previous judicial constructions of statutes when creating new statutes or amendments consistent with antecedent law.).
 Surety Bail Bondsmen v. Ins. Comm'r, , ¶ 22, , 1184-85 (citing Lierly v. Tidewater Petroleum Corp., , n.8, , 905).
 Short, , 761 P.2d at 474-75.
 Id. at 475.
 Id.
 In re A.M., , ¶ 7, , 487.
 Purcell v. Parker, , ¶ 19, , 842.
 Addington v. Texas, 441 U.S. 418, 424, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).
 Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
 Gilbert v. Homar, 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997).
 See, e.g., Al-Khouri v. Okla. Health Care Auth., , ¶ 13, , 372 (Approved for Publication by Oklahoma Supreme Court) ("A person or entity may have a liberty interest if its good name, reputation, honor, or integrity is at stake because of what the government is doing to him."); Primas v. City of Oklahoma City, 958 F.2d 1506, 1510 (10thMelton v. City of Oklahoma City, 928 F.2d 920 (10th Cir. 1991) (en banc) cert. denied, 502 U.S. 906, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991) (a liberty interest claim exists when a public employer takes action to terminate an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities)).
 Respondents' appellate answer brief states a FY 2019 audit showed the school district using $8,810,000 bond election proceeds for an impermissible purpose, as well as stating the school did not provide a full-time, in-person instructional delivery to students between March of 2020 through May 2021. Facts should be referenced to an appellate record, or a described document before the Court for our review and examination. See, e.g., Okla. Sup. Ct. R. 1.11(j) ("Citations to a document in the record other than a transcript shall include the name of the document and the pages within the document to which reference is made (e.g., Petition at 17); and may include a description of the document.").
 Berry & Berry Acquisitions, LLC v. BFN Props., LLC, , ¶ 25, , 1073 (equity is exercised "in light of all circumstances").
 District of Columbia v. Wesby, 583 U.S. ___, 138 S.Ct. 577, 588, 199 L.Ed.2d 453 (2018) ("The 'totality of the circumstances' requires courts to consider 'the whole picture.' . . . Our precedents recognize that the whole is often greater than the sum of its parts--especially when the parts are viewed in isolation."); Bourjaily v. United States, 483 U.S. 171, 179-80, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) ("[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts.").
 Gilbert, 520 U.S. at 929.
 Id. at 931-32.
 Id. at 935.
 State ex rel. Okla. State Bd. of Med. Licensure & Supervision v. Rivero, , ¶¶ 28-30, , 47-48 ("Exempting a constitutional issue from exhaustion is itself subject to exceptions. For examples, we have mentioned a party's ability to frame the constitutional challenge as a statutory issue in the context of an as-applied constitutional challenge instead of a facial challenge to a statute or a facially void order.").
 Western Heights, , ¶ 9, (citing Patrick v. State Bd. of Educ., , (a school superintendent filed a district court petition to review the administrative decision of the State Board of Education which ordered a two-year probation for the superintendent)).
 The phrases gratis dictum, simplex dictum, obiter dictum are often shortened to simply "dicta" in application. These terms refer to a statement, or remark, made in a judicial opinion when the content is not necessary or essential to the logic or reasoning used in the opinion to adjudicate the actual controversy then before the court. Dictum, Blacks Law Dictionary 541 (4th ed. 1951); Pierre N. Leval, Judging Under the Constitution: Dicta About Dicta, 81 N.Y.U. L. Rev. 1249, 1257-58 (2006) (Judge Leval's explanation for determining whether a statement is dicta).
 In re Estate of Bleeker, , n.25, , 781 (noting method for determining the ratio decidendi, and explaining it is a rule of law expressly or impliedly used by the judge as a necessary step in the reasoning to support adjudication of the controversy before the court).
 Brokers' Choice of Am. v. NBC Universal, Inc., 861 F.3d 1081, 1099 n.15 (10th Cir. 2017) (citing Bishop v. Smith, 760 F.3d 1070, 1083 (10th Cir. 2014)); Arcam Pharm. Corp. v. Faria, 513 F.3d 1, 3 (1st Cir. 2007); cf. Am. Trailers, Inc. v. Walker, , , 1154 ("Statements in a decision neither necessary to support the conclusion reached nor applicable to the situation are dictum, and not in any way controlling.").
 See, e.g., Indep. Sch. Dist. No. 54 of Lincoln Cty. v. Indep. Sch. Dist. No. 67 of Payne Cty., , 418 P.3d 693 (Court classifies language in previous opinion as dicta and then explains it is not persuasive in controversy before the Court).
 Cinco Enters., Inc. v. Benso, , ¶ 10, ,1083--84; Handy v. City of Lawton, , , 873.
 Branch Trucking Co. v. State ex rel. Okla. Tax Comm'n, , , 690--91 (explanation the Oklahoma Tax Commission was bound by a final judgment in a District Court although the judgment was inconsistent with an opinion by the Oklahoma Attorney General).
 See, e.g., Salazar v. City of Oklahoma City, , ¶¶ 11-12, , 1061-62 (application of a prior legal decision for "issue-preclusive force" such as res judicata is based upon a party producing a judgment roll for an examination of claims pressed for adjudication and issues actually decided); Robinson v. Texhoma Limestone, Inc., , ¶¶ 8-12, , 675-676 (discussing compulsory counterclaims and res judicata); City of Oklahoma City v. Robinson, , , 533 (quoting Gille v. Emmons, 58 Kan. 118, 48 P. 569, 570 (1897) (A judgment upon a matter outside of the issues pled and tried of record must, of necessity, be altogether arbitrary and unjust, as it concludes a point upon which the parties have not been heard)); cf. Farley v. City of Claremore, , ¶ 13, , 1222 (in proper circumstances, res judicata may be raised as an affirmative defense on a motion to dismiss when using facts known by judicial notice).
 Lehr v. Robertson, 463 U.S. 248, 256, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983).
 Cole v. State ex. rel. Dep't of Pub. Safety, , ¶ 15, , 472.
 Turley v. Flag--Redfern Oil Co., , , 136 ("Where injured parties have an alternative statutory remedy to claimed due process violations, procedural defects are cured by the remedy afforded." (citing Blanchette v. Conn. Gen. Ins. Corp., 419 U.S. 102, 156, 95 S.Ct. 335, 365, 42 L.Ed.2d 320, 361 (1974))).
 Tulsa Indus. Auth. v. City of Tulsa, , n. 43, , 125; Redbird v. Okla. Tax Comm'n, , ¶¶ 10-15, , 527-29.
 Spencer Dev. Co. v. Indep. Sch. Dist. No. I-89, , n.5, , 480 (citing Tryon Dependent Sch. Dist. No. 125 of Lincoln Cty. v. Carrier, , ; In re Wickstrum, , , 664 ; Okla. Farm Bureau v. State Bd. of Educ., , , 187; Hatfield v. Jimerson, , , 983).
 Okla. Const. Art. 13, § 5: "The supervision of instruction in the public schools shall be vested in a Board of Education, whose powers and duties shall be prescribed by law. The Superintendent of Public Instruction shall be President of the Board. Until otherwise provide by law, the Governor, Secretary of State, and Attorney General shall be ex-officio members, and with the Superintendent, compose the Board of Education."
 Okla. Farm Bureau v. State Bd. of Educ., , , 186; Indep. Sch. Dist. No. 65 of Wagoner Cty. v. State Bd. of Educ., , (The Legislature has plenary power with respect to the establishment and change of school districts, and it may delegate the exercise of that power to the State Board as a subordinate agent under such terms as it judges to be reasonable.).
 Okla. Farm Bureau, , 444 P.2d at 187.
 I.T.K., , ¶ 29, 451 P.3d at 139-40 (explaining OAC § 210:10-1-7 (2011 & 2016)).
 Indep. Sch. Dist. No. 52 of Okla. Cty., , ¶¶ 29-39, 473 P.3d at 489-93; Sch. Dist. No. 25 v. Hodge, , , 583-85.
 (13) (as amended by Laws 2021, c. 563, § 5, emerg. eff. May 28, 2021, but not altering quoted language):
"13. Have authority to require persons having administrative control of all school districts in Oklahoma to make such regular and special reports regarding the activities of the schools in said districts as the Board may deem needful for the proper exercise of its duties and functions. Such authority shall include the right of the State Board of Education to withhold all state funds under its control, to withhold official recognition, including accrediting, until such required reports have been filed and accepted in the office of said Board and to revoke the certificates of persons failing or refusing to make such reports."
 Estes v. ConocoPhillips Co., , ¶ 10, , 523 ("Administrative rules are valid expressions of lawmaking powers having the force and effect of law."); Shop & Swap Advertiser, Inc. v. Okla.Tax Comm'n, , (policy order of Tax Commission reversed because agency's construction of state statute was incorrect); Daffin v. State ex rel. Dep't of Mines, , (administrative rule unconstitutional).
 OAC § 210:35-3-203 (Timelines for implementing standards) (revoked at 15 Okla. Reg. 2306, June 11, 1998).
 .3 (B): "State accreditation shall be withdrawn from or denied to schools or school districts that do not meet the requirements of Sections 2, 3, 6, 28, 29, 30, 44, 45, 46, 47, 48, and 49 of this act, and the State Board of Education shall take action as required by this act to ensure that students affected are enrolled in schools that are able to maintain state accreditation."
 Grisham v. City of Oklahoma City, , n.8, , 847 (citing Woods Dev. Co. v. Meurer Abstract, , , 33).
 Indep. Sch. Dist. No. 52 of Okla. Cty., , ¶ 37, 473 P.3d at 492.
 Indep. Sch. Dist. No. 52 of Okla. Cty., , ¶ 92, 473 P.3d at 513.